**IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT**
**DUVAL COUNTY**

| | |
|---|---|
| ABLE EVENTS | |
| And | |
| JONATHAN KENDRICK | **Case No:** |
| Plaintiffs | |
| v. | |
| ROCKET BALL, LTD<br>d/b/a THE HOUSTON ROCKETS AND CLUTCH<br>CITY SPORTS & ENTERTAINMENT L.P.<br>1510 Polk Street<br>Houston, TX, 77002 | |
| And | |
| TILMAN FERTITTA<br>1510 Polk Street<br>Houston, TX, 77002 | |
| And | |
| PATRICK FERTITTA<br>1510 Polk Street<br>Houston, TX, 77002 | |
| And | |
| JASON MILLER<br>1700 Broadway, 29th Floor<br>New York, NY 10019 | |
| And | |
| THADDEUS BROWN<br>3 Banner Way<br>Camden, NJ, 08103, USA | |
| And | |

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 08/01/2025 08:57:17 AM

JAMES KRAMER
1510 W. Loop South
Houston, Texas 77027

And

ROCCO MAGNI
1000 Louisiana
Suite 5100
Houston, TX 77002-5096

AND

SUSMAN GODFREY LLP
1000 Louisiana
Suite 5100
Houston, TX 77002-5096

                   Defendants.

## **COMPLAINT**

Plaintiffs ABLE EVENTS ("ABLE EVENTS") and JONATHAN KENDRICK ("MR. KENDRICK") hereby bring suit against Defendants ROCKET BALL, LTD d/b/a THE HOUSTON ROCKETS AND CLUTCH CITY SPORTS & ENTERTAINMENT L.P. (the "ROCKETS"), TILMAN FERTITTA, PATRICK FERTITTA, JASON MILLER ("MILLER"), THADDEUS BROWN ("BROWN"), JAMES KRAMER ("KRAMER"), ROCCO MAGNI ("MAGNI"), and SUSMAN GODFREY, LLP ("SUSMAN") for fraud, assault, and of 18 U.S.C. § 1961 et seq. ("Racketeer Influenced and Corrupt Organizations Act" or "RICO").

## **JURISDICTION AND VENUE**

1.     This is an action for damages in excess of $30,000, exclusive of interest, costs, and attorney's fees.

2.      Venue for this action is properly in Duval, Florida, and the cause of action primarily arose in this circuit. Further, Defendants, each and every one of them do substantial business in this circuit and in the state of Florida.

## THE PARTIES

3.      ABLE EVENTS, which was formerly known as ROKiT Marketing, Inc ("RMI"), is incorporated under the laws of Delaware. For the purposes of this lawsuit, this entity formerly known as RMI as well as now currently ABLE EVENTS will be collectively referred to as ABLE EVENTS. ABLE EVENTS does business in this judicial circuit and has a physical location in this judicial circuit to further substantial business in Florida.

4.      MR. KENDRICK is an individual and a citizen of the United Kingdom. MR. KENDRICK does substantial business in Florida and in this judicial circuit. Mr. KENDRICK has a physical residence in the state of Florida

5.      The ROCKETS are a corporation incorporated under the laws of Texas.

6.      Defendant TILMAN FERTITTA is an individual and a citizen of Texas.

7.      Defendant PATRICK FERTITTA is an individual and a citizen of Texas.

8.      Defendant MILLER is an individual and a citizen of Pennsylvania.

9.      Defendant BROWN is an individual and a citizen of Pennsylvania.

10.      Defendant KRAMER is an individual and a citizen of Texas.

11.      Defendant MAGNI is an individual and a citizen of Texas. At all material times, Defendant MAGNI was employed as a partner by Defendant SUSMAN.

12.      Defendant SUSMAN is a limited liability partnership incorporated under the laws of Texas.

## STANDING

13.     Plaintiffs have standing to bring claims because they have been directly and proximately harmed by conduct of the Defendants as set forth herein.

14.     As a direct and proximate result of the fraudulent statements made by the Defendants, Plaintiffs have suffered significant financial loss and damage to their goodwill and business reputation and imminent fear of bodily harm and/or offensive contact.

## FACTS

### *Background Facts*

15.     In August of 2018, the ROCKETS were actively looking for a jersey sponsor for the upcoming seasons and had retained Defendant MILLER of Excel Sports Management to broker the deal. In early August, MILLER reached out to Clinton Ehrlich ("Mr. Ehrlich"), Chief Marketing Officer of ABLE EVENTS, to discuss ABLE EVENTS serving as the ROCKETS' official jersey sponsor.

16.     At the same time, ROKiT Drinks LLC—a premium drinks business that offers a unique collection of soft drinks and alcohol brands across spirits, beer and energy drinks was offering numerous brands of alcoholic beverages for sale in the United States: Bogart's Spirits, which consisted of Bogart's Vodka, Bogart's Gin, Bogart's Whiskey, Bogart's Rum, Bandero Premium Tequila, and ABK Beer, which included styles such as Hell, Edel, Pils, Schwarz and Rose (collectively, "ROKiT Drinks' Products").

17.     Defendant TILMAN FERTITTA is the owner of the ROCKETS and he is also the President, Chairman, and CEO of Landry's LLC ("Landry's"). Landry's is a dining, hospitality, entertainment, and gaming company with over 600 locations worldwide. On formation and belief

TILMAN FERTITTA and his family are connected to the Mafia,[1] which is who the RICO Act was originally targeted at when it was instituted in 1970.[2] It was only after the events set forth in this Complaint occurred, that Plaintiffs learned that the Fertitta family was reported to have long-standing mob ties. Incredibly, TILMAN FERTITTA was nevertheless nominated and confirmed recently to be the U.S. Ambassador to Italy and San Marino. This confirmation regrettably came as no surprise, as the U.S. Senate Foreign Relations Committee did not, even when informed by Plaintiffs of the likelihood of mob ties, investigate and looked the other way to likely Mafia connections as result of Defendant TILMAN FERTITTA'S huge political contributions to both Republicans and Democrat politicians, which have conveniently and strategically lined the pockets of both political parties. A simple review of Federal Election Commission records shows this.

18.    MILLER of Excel Sports Management, who had been retained by the Houston Rockets to broker a deal for the Sponsorship Agreement with ABLE EVENTS, was involved from the outset in the discussions and negotiations regarding the Sponsorship Agreement. On or about August 7, 2018, MILLER relayed to both BROWN, CEO of the Houston Rockets, and PATRICK FERTITTA ABLE EVENTS' interest in becoming a uniform sponsor for the Houston Rockets and Landry's promotion and an agreement for the sale of ROKiT Drinks' beverages at its locations, Exhibit 1, PATRICK FERTITTA is the son of the ROCKETS owner, TILMAN FERTITTA, and is a fixture in decision-making for the ROCKETS. PATRICK FERTITTA's role is to represent the interests of TILMAN FERTITTA and the family, to serve as their eyes and ears and to ensure that all decisions are in the so called best interests of the ROCKETS and

---

[1] Ashish Mathur, *Rockets news: Tilman Fertitta's family has deep mob ties*, Clutch Points, Jun. 18, 2020, available at: https://clutchpoints.com/rockets-news-tilman-fertitta-family-has-deep-mob-ties

[2] https://www.cbsnews.com/minnesota/news/rico-act-explainer/

the Fertitta family. Exhibit 2. In addition to agreeing to serve ROKiT Drinks' beverages at all ROCKETS' home games and other Toyota Center events, PATRICK FERTITTA agreed that Landry's would indeed promote ROKiT Drinks' products at its locations around the world. MILLER, in turn relayed these details to Clinton Ehrlich of ABLE EVENTS, who in turn advised MR. KENDRICK. Exhibit 3. In reliance on these assurances, the Debtor agreed to press forward with discussions about the Sponsorship Agreement.

19.    From the very outset, the ROCKETS proposed a two-pronged agreement, whereby ABLE EVENTS would pay an annual multi-million-dollar fee to the ROCKETS to be a named sponsor on the ROCKETS' National Basketball Association ("NBA") jerseys and in exchange, Landry's would purchase, feature and promote ROKiT Drinks' Products at all of its over 600 locations worldwide.

20.    As just one example of this two-pronged proposal by the ROCKETS and Landry's, in an August 7, 2018, email from MILLER to Mr. Ehrlich, MILLER represented:

> [DEFENDANT PATRICK FERTITTA] also made it clear that we could push your products at all 600 Landry's owned and operated locations around the world. He even threw out the idea of specialized cocktails at the restaurants promoting the [ROKiT Drinks] brands.

21.    Thus, at all material times, the proposal from the ROCKETS was two-pronged and contained two separate components: (1) a jersey sponsorship agreement between ABLE EVENTS and the ROCKETS and (2) a beverage agreement between ROKiT Drinks and Landry's. Because of MR. KENDRICK's  interest in the broad, two-pronged partnership proposed by the ROCKETS and Fertitta and the synergies that existed between his companies and TILMAN FERTITTA's companies, ABLE EVENTS agreed to press forward with negotiations concerning the ROCKETS jersey sponsorship portion of the proposed agreement.

22.     On or about August 14, 2018, MR. KENDRICK, acting on behalf of ABLE EVENTS and ROKiT Drinks, and TILMAN FERTITTA, acting on behalf of the ROCKETS and Landry's, met over lunch at Maestro's in Houston to discuss the proposed partnership between their respective businesses. Also present at this meeting were DEFENDANTS BROWN, MILLER, PATRICK FERTITTA and Mr. Ehrlich.

23.     At the meeting, the parties reviewed the August 13, 2018 Partnership Proposal and Presentation prepared by the ROCKETS. Consistent with MILLER's email from the week prior, the ROCKETS' comprehensive Partnership Proposal also detailed terms relating to both a jersey sponsorship agreement with the ROCKETS and a proposed beverage agreement with Landry's.

24.     As to the sponsorship agreement, the ROCKETS' Partnership Proposal contemplated that ABLE EVENTS would pay an annual multi-million-dollar fee to the ROCKETS to be a named sponsor on the ROCKETS' game jerseys and purportedly would receive numerous other benefits outlined in the sponsorship agreement. As for the beverage arrangement, the ROCKETS and Landry's promised to feature and promote Bogart Spirits, Bandero Premium Tequila, and ABK Beer at over 600 dining, hospitality, entertainment, and gaming properties.

25.     At this lunch meeting. MR. KENDRICK confirmed his intention that a beverage agreement would be necessary as part of an overall sponsorship arrangement.

26.     During this lunch, TILMAN FERTITTA selected ROKiT Drinks' Bogart's Vodka in a blind tasting against Tito's Vodka.  The results of this blind tasting had cemented the beverage agreement between the parties and confirmed the proposed deal was a two prong deal  .

27.     The following day, MILLER  sent an email to MR. KENDRICK and Mr. Ehrlich stating, " "[t]his is going to be a **monumental partnership for all <u>three</u> organizations** (ROKIT,

the Rockets, and **Landry's Inc**.)." MILLER also indicated that he would be introducing Alison Kennedy, CEO of ROKiT Drinks, to KRAMER, Vice President of Beverage Operations of Landry's/Fertitta Entertainment, "[u]nder separate cover… so they can [get] the process started on that side of the house [i.e., the beverage deal], and in the meantime, [he and the Rockets] [would]…. get going on the sponsorship agreement." (*Id*.). Finally, MILLER sent a separate email introducing Ms. Kennedy and KRAMER so that they could begin working together "**to nail down all the details necessary to lock in distribution for the portfolio at all 600+ Fertitta Entertainment locations**." That afternoon, Ms. Kennedy and KRAMER had a phone call to begin doing just that.

28.    As Landry's had made clear that they were committed to the beverage agreement portion of the overall partnership agreement, ABLE EVENTS agreed and finalized the jersey sponsorship agreement with the ROCKETS on or around October 9, 2018. ABLE EVENTS was obligated to pay and did pay the ROCKETS a Base Contract Price of $9,750.000 for the 2018-2019 season in exchange for advertising and promotional benefits.

29.    The jersey sponsorship agreement needed to be finalized before the start of the 2018 NBA season on October 16, 2018, and thus, Plaintiffs relied on the Defendants' fraudulent assertions that the beverage portion of the overall partnership agreement would be worked out and executed shortly thereafter and thus agreed to execute the jersey sponsorship portion of the overall partnership agreement earlier in time for the beginning of the 2018 NBA season.

30.    At all material times, MR. KENDRICK and ABLE EVENTS made it clear that their agreement to sponsor the ROCKETS jersey was predicated on the execution of the Landry's beverage agreement, and that without the Landry's beverage agreement, MR. KENDRICK and ABLE EVENTS had no interest in the ROCKETS jersey sponsorship

agreement, and the Defendants had actual knowledge of this, given that ROKiT Drinks' only business was selling beverages.

31.     This is because the Landry's beverage agreement, if executed by Landry's, to purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations would have netted profits to ROKiT Drinks in the tens of millions of dollars, which the Defendants had actual knowledge of.

32.     On September 12, 2018, DEFENDANT BROWN, CEO of the ROCKETS and the ROCKETS suddenly and without any prior warning advised ABLE EVENTS that the logo to be worn on the Houston Rockets' game jerseys would have to be changed from simply "ROKiT" to "ROKiT Phones." This edict from the ROCKETS that the logo would have to be changed resulted from objections by the NBA to the "ROKiT" logo. Previously unbeknownst to ABLE EVENTS, DEFENDANT BROWN advised that the NBA does not typically allow NBA teams to display ads by alcohol manufacturers on team uniforms. The red and white "ROKiT" logo that was the subject of the Sponsorship Agreement was, in fact, the, logo of ROKiT Drinks. At the time of the negotiation and execution of the Sponsorship Agreement, ROKiT Drinks was the only company utilizing this specific logo. ROKiT Phones would not launch its product until Spring of 2019. Without prior consultation with ABLE EVENTS, DEFENDANT BROWN and the ROCKETS had taken it on themselves to present to the NBA an alternative logo which read "ROKiT Phones" and convinced the league to accept it.

33.     When BROWN sprung this on MR. KENDRICK at the eleventh hour, MR. KENDRICK understandably balked. A logo reading "ROKiT Phones" was not the deal which ABLE EVENTS had bargained for. Although MR. KENDRICK did not threaten to pull out of negotiations for the Sponsorship Agreement at that time, he made very clear to BROWN and the

ROCKETS that this was not just a small matter that could be quickly resolved. He stressed that it was as significant to ABLE EVENTS as it would be to the ROCKETS if they were suddenly asked to change the team's logo.

34.     The Sponsorship Agreement would have obligated ABLE EVENTS to pay the Houston Rockets $9.75 million in the first year of the deal. Fearful that the ROCKETS were going to lose the Sponsorship Agreement with ABLE EVENTS, and the significant revenue, DEFENDANT BROWN on behalf of the ROCKETS subsequently represented to MR. KENDRICK that he had somehow convinced the league to relent and to allow the "ROKiT"-only logo on the jerseys. It is clear that the ROCKETS deceived the NBA and never revealed that a beverage deal was part of consideration for the Sponsorship Agreement.

35.     In the following months, ROKiT Drinks and Landry's did work out and finalize the beverage  agreement, but immediately after  the agreement was reached, it became clear that Landry's had no intent on actually following through on the terms of the agreement, and that the beverage agreement had only been proposed by the Defendants to fraudulently induce ABLE EVENTS to agree to the multi-year, multi-million dollar sponsorship agreement with the ROCKETS.

36.     The Defendants were only fraudulently pretending to be interested in the beverage agreement to fraudulently induce ABLE EVENTS to agree to the multi-year, multi-million dollar jersey sponsorship agreement with the ROCKETS, and once ABLE EVENTS had made their payment for the jersey sponsorship agreement, they quickly switched gears and refused to carry out the beverage agreement.

37.     Only a very small percentage of the Landry's locations ever offered or ordered products from ROKiT Drinks. On or around July 9, 2019 the sales from ROKiT Drinks to

Landry's totaled approximately $256,421.25 and only a small portion of the Landry's establishments ever even offered ROKiT Drinks' Products on their menus.

38.    On October 22, 2018, Alison Kennedy of ROK Drinks travelled to Houston to meet with KRAMER of Landry's/Fertitta Entertainment. In connection with Ms. Kennedy's travel, Dawn Keen, Senior Director of Corporate Partnerships for Houston Rockets, wrote the following email to Coleman Hudson at Landry's distinguishing the two relationships.

> Hi Coleman!
> I would like to e-introduce you to Alison Kennedy, our newest partner with ROKiT and ROK Drinks. She will be coming to Houston this week for meetings at Toyota Center and with James Kramer. Can you please assist her with a preferred partner rate for her stay? She will be here Tues - Thurs this week. Thank you!

39.    At no time during the term of the Sponsorship Agreement did the ROCKETS, DEFENDANT BROWN, DEFENDANT TILMAN FERTITTA, or DEFENDANT PATRICK FERTITTA ever advise ROKiT Marketing that the beverage deal that had been agreed to did not exist. Instead, ROCKETS and their management promised to work hard to satisfy the generate sales.

40.    Indeed, on or around January 9, 2019, ABLE EVENTS became aware of the lack of performance by the ROCKETS. Accordingly, MR. KENDRICK sent an email to Gretchen Scheirr and DEFENDANT BROWN of the ROCKETS stating as follows:

> [I]t was clearly agreed that you wold [sic] help us get our drinks into your outlets and that was the main reason I got the sponsorship through with the Rockets. NOW that said I love the rockets sponsorship… [b]ut it really does not bode well when we are due to pay you the next installment next week as agreed, so almost 10m paid and the sales for alcohol stand at… [a] grand total of $11,037.00!!!!!! Or 0.01% of the sponsorship amount.

41.    A response to this email came from KRAMER of Landry's/Fertitta Entertainment on January 10th, 2019, where KRAMER wrote:

I am providing a quick update knowing you are reviewing sales and are concerned the numbers look small. As I am sure you are aware, several different things are happening which includes opening new states, distributor changes, and product in transport. When you and I spoke in December I gave you my word that I would ramp up ABK and Bandero Tequila instead of waiting for the new Bogart bottle launch. These efforts are well underway[.]

42.     Subsequently, ABLE EVENTS and the ROCKETS went to arbitration over the jersey sponsorship agreement, and through this continued and sustained fraud, the ROCKETS were able to win an award in arbitration.

43.     As of January 21, 2020, ROKiT Drinks had only made approximately $440,000 in sales to a small portion of the Landry's locations. This constituted only a small fraction of the sales expected by ROKiT Drinks.

44.     As evidence that the ROCKETS never intended to honor the beverage portion of the overall partnership agreement, in subsequent litigation, the ROCKETS began to contend that such an agreement was illegal under Texas Alcohol and Beverage Code § 102.16(a)(1) and §102.07. Given TILMAN FERTITTA's  status as an individual who is "recognized as a world leader in the dining, hospitality, entertainment and gaming industries" and has over 40 years of experience owning and operating establishments across the country, it is clear that Defendants were aware of these code provisions when they proposed the beverage agreement to the Plaintiffs to fraudulently induce the jersey sponsorship agreement between ABLE EVENTS and the ROCKETS, yet they hid this from the Plaintiffs. Indeed, to the contrary, MR. KENDRICK is from the United Kingdom, where no such code provisions exist, and the ROCKETS knew and took advantage of this.

45.     Furthermore, in or about January 2022, Defendants MAGNI and SUSMAN, in concert with their clients, the ROCKETS and TILMAN FERTITTA, have made threats against MR. KENDRICK and his family, specifically his wife, and given their client's widely reported

ties to the Mafia[3], these threats have placed MR. KENDRICK and his family in reasonable fear of imminent bodily harm and/or offensive contact.  In the weeks following Defendants MAGNI and SUSMAN's threats, MR. KENDRICK became aware of suspicious threatening vehicles parked outside of his offices and believes that he was followed on one or more occasion.

46.     As a direct and proximate result of the fraudulent actions of the Defendants, ROKIT WORLD has lost the Bogarts brand, causing approximately $100 million dollars in damages.

47.     As a direct and proximate result of the fraudulent actions of the Defendants, MR. KENDRICK has lost 90% equity in Bandero Tequila, causing approximately $260 million dollars in damages.

### *Facts Pertaining to RICO*

48.     Defendants ROCKETS, TILMAN FERTITTA, PATRICK FERTITTA, MILLER, BROWN and MAGNI, and SUSMAN form the RICO enterprise.

49.     Defendants, acting in concert, jointly and severally, entered into and took action in furtherance of, a conspiracy using the U.S. mails and wires to fraudulently induce the jersey sponsorship agreement between ABLE EVENTS and the ROCKETS. Furthermore, Defendants, acting in concert, jointly and severally, entered into and took action in furtherance of a conspiracy to tamper with and retaliate against Plaintiffs, who were victims to the Defendants' fraudulent scheme.

50.     Defendants and their co-conspirators are a group of "persons" associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint. Specifically, the purpose of Defendants'

---

[3] *See supra* fn. 1.

racketeering enterprise included, but was not limited to, reaping large financial gain using the U.S. mails and wires to fraudulently induce ABLE EVENTS to enter into the jersey sponsorship agreement with the ROCKETS and then subsequently to tamper with and retaliate against Plaintiffs, who were victims to the Defendants' fraudulent scheme.   These Defendants formed this association in fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity.

51.    Defendants have committed the following Predicate Acts:

Use of U.S Mails to Defraud in Violation of 18 U.S.C. § 1341/ Use of U.S. Wires to Defraud in Violation of 18 U.S.C. § 1343.

Predicate Act No. 1: On or about August 7, 2018, MILLER, acting on behalf of the Defendants used the mails and wires to defraud ABLE EVENTS into entering into the jersey sponsorship agreement by emailing to Mr. Erlich confirming the Beverage Agreement: "Patrick [Fertitta] also made it clear that we could push your products at all 600 Landry's owned and operated locations around the world. He even threw out the idea of specialized cocktails at the restaurants promoting the [ROKiT Drinks] brand."

Predicate Act No. 2: On or about August 14, 2018, MILLER, acting on behalf of the Defendants used the mails and wires to defraud ABLE EVENTS into entering into the jersey sponsorship agreement by emailing to MR. KENDRICK and Mr. Erlich confirming the Beverage Agreement: "[t]his is going to be a monumental partnership for all three organizations (ROK/ROKiT, the Rockets, and Landry's Inc.).

Predicate Act No. 3: On or about August 14, 2018, MILLER, acting on behalf of the Defendants used the mails and wires to defraud ABLE EVENTS into entering into the jersey sponsorship agreement by sending an email introducing Ms. Kennedy and KRAMER so that they could begin working together to: "nail down all the details necessary to lock in distribution for the portfolio at all 600+ Fertitta Entertainment locations."

Predicate Act No. 4:

Violation of 18 U.S.C. § 1512 (Tampering with a victim) and 18 U.S.C. § 1513 (Retaliating against a victim)

Predicate Act No. 4: On or about January 2022, Defendants MAGNI and SUSMAN, acting on behalf of and in concert with Defendants, made threats against MR. KENDRICK, and given their client's widely reported ties to the Mafia, and these threats have placed MR.

KENDRICK in reasonable fear of imminent bodily harm and/or offensive contact. In the weeks following Defendants MAGNI and SUSMAN's threats, MR. KENDRICK became aware of suspicious threatening vehicles parked outside of his offices and believes that he was followed on one or more occasion.

52.    Predicate acts 1-3 were also perpetrated during the arbitration styled *Rocket Ball, Ltd., d/b/a The Houston Rockets et al. v. ROKiT Marketing Inc.,* Case No. 01-20-0001-6852, leading to an arbitration award in favor of the ROCKETS on or around October 10, 2020, which was confirmed by a Texas state court on December 10, 2020 and then a subsequent sister state judgment was filed in Los Angeles Superior Court on March 12, 2024.

53.    With regard to predicate acts 1-3, the fraud was only discovered by the Plaintiffs in or around May of 2022 when during a litigation styled *ROKiT Drinks LLC v. Landry's Inc*, 4:22-cv-01551 (S.D. Tx.), Landry's and Fertitta Entertainment raised the argument that the beverage agreement was allegedly illegal under the Texas Alcohol and Beverage Code. While Plaintiffs believe that this is not true, the fact that Landry's and Fertitta Entertainment even made this argument shows that they believed that the Beverage Agreement was illegal and therefore confirmed that they had the fraudulent scheme and intention of not actually carrying it out.

54.    Defendants' violations of 18 U.S.C. §§ 1962(a), (b), (c), (d), 18 U.S.C. §§ 1341, 1343, 1956(a)(2), 2314, and 2315 constitute a "pattern of racketeering activity," as that term is defined in Section 1961(1) and (5) of RICO, because the acts were related to each other and had continuity. As alleged herein, Defendants' violations of these statutes had the same or similar purposes, results, participants, victims, or methods of commission; they were interrelated and not isolated events.

55.    Defendants' violations of these laws as set forth herein, each of which directly and proximately injured Plaintiffs and others, constituted a continuous course of conduct

spanning a period since at least 2018, compounded by threats to Plaintiffs as pled herein, calculated to scare them not to pursue Plaintiffs' claims.

56.    The unlawful actions of Defendants, each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs in their business and property

## CAUSES OF ACTION
### Count 2 – *Fraud*
### *Defendant the Rockets*

57.    Plaintiffs reallege and incorporate the facts set forth in this Complaint as if set forth in full herein.

58.    In or around August of 2018, via email, over phone, and in person, Defendant ROCKETS, and its agents and assigns, made the following fraudulent statement of a material fact: **As part of an enterprise-wide collaboration in conjunction with the jersey sponsorship agreement with Defendant ROCKETS, Landry's would "purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations."**

59.    Defendant ROCKETS was aware of the falsity of this statement because they never actually intended for Landry's purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations.

60.    Defendant ROCKETS made this false statement of material fact with the clear intention that Plaintiffs would rely on it, as it was made to induce ABLE EVENTS to enter into the jersey sponsorship agreement with the ROCKETS.

61.    Plaintiffs relied on Defendant ROCKETS' fraudulent statements as ABLE EVENTS agreed to the jersey sponsorship agreement with the ROCKETS based on the fraudulent assurances and guarantees that Landry's would purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations.

62.     Defendant ROCKETS had actual knowledge that ABLE EVENTS would not have entered into the jersey sponsorship agreement with the ROCKETS without the corresponding agreement that Landry's would purchase, feature and promote ROKiT Drinks' products at all over 600 Landry's locations.

63.     As a result of the fraudulent and false statement and omission by Defendant ROCKETS, Plaintiffs suffered severe damage both financially, as well as to their goodwill and business reputation.

### CAUSES OF ACTION
### Count 3 – *Assault*
### *Defendants Magni and Susman against Plaintiff Mr. Kendrick*

64.     Plaintiff MR. KENDRICK realleges and incorporates the facts set forth in this Complaint as if set forth in full herein.

65.     Defendants MAGNI and SUSMAN have made numerous threats to injure MR. KENDRICK and his family

66.     Defendants MAGNI and SUSMAN's client, Fertitta, is known to have extensive ties to the Mafia.

67.     MR. KENDRICK understood these threats to place him and his family in reasonable fear of imminent bodily harm and/or offensive contact by Defendants MAGNI and SUSMAN and their agents and/or surrogates.

### CAUSES OF ACTION
### Count 4 – *Intentional Infliction of Emotional Distress*
### *Defendants Magni and Susman against Plaintiff Mr. Kendrick*

68.     Plaintiff MR. KENDRICK realleges and incorporates the facts set forth in this Complaint as if set forth in full herein.

69.     Defendants MAGNI and SUSMAN have made numerous threats to injure MR.

KENDRICK.

70.     Defendants MAGNI and SUSMAN's client, TILMAN FERTITTA, is known to have extensive ties to the mafia.

71.     Defendants MAGNI and SUSMAN's conduct was intentional and outrageous.

72.     As a result of these threats, MR. KENDRICK has suffered severe emotional distress.

### CAUSES OF ACTION
### Count 5 - *Violations of RICO, 18 U.S.C. § 1962(c)*
### *Against All Defendants*

73.     Plaintiffs re-allege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

74.     Section 1962(c) prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering.

75.     At all relevant times, each Defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

76.     Each Plaintiff is a person within the meaning of 18 U.S.C. § 1964(c).

77.     Each and every Defendant is a person capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

78.     As set forth in the preceding paragraphs of this Complaint, each and every Defendant, using the U.S. mails and wires in furtherance of the racketeering enterprise and conspiracy, participated in conducting and/or directing the affairs of the racketeering enterprise. Furthermore, each and every Defendant engaged in violations of 18 U.S.C. 1512 and 1513 for tampering and retaliating against the victim of their fraudulent scheme and conspiracy.

18

79.     Defendants' racketeering enterprise and conspiracy, using the U.S. mails and wires, was conducted for the purpose of reaping large financial gains from ABLE EVENTS. Therefore, as a result of Defendants' conducting of this criminal enterprise, Plaintiffs suffered financial injury to their business and/or property in the form of substantial loss of earnings.

80.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from each and every Defendant.

## CAUSES OF ACTION
### Count 6 - *Violations of RICO, 18 U.S.C. § 1962(d)*
### *Against All Defendants*

81.     Plaintiffs re-allege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

82.     Section 1962(d) prohibits a person from conspiring to violate 18 U.S.C. §§ 1962 (a), (b), or (c).

83.     As described in the foregoing paragraphs of this Complaint, each and every Defendant has unlawfully, knowingly, and willfully combined, conspired, confederated and agreed together and with each other to participate in an endeavor(s) which would constitute a violation of the RICO statute and each and every Defendant has willfully conspired and agreed that Defendants would carry out each predicate act in furtherance of the racketeering enterprise and conspiracy.

84.     Specifically, the ROCKETS, TILMAN FERTITTA, PATRICK FERTITTA, BROWN, KRAMER, and MILLER fraudulently used the U.S. mails and wires to fraudulently induce ABLE EVENTS to enter into the jersey sponsorship agreement by promising the Beverage Agreement, when the ROCKETS had no intention of actually carrying out the Beverage Agreement.

85.    Specifically, Defendants MAGNI and SUSMAN then engaged in violations of 18 U.S.C. § 1512 and 18 U.S.C. § 1513 to tamper with and retaliate against Plaintiffs.

86.    Each and every Defendant knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a)-(c), in violation of 18 U.S.C. § 1962(d).

87.    Each and every Defendant had knowledge of and agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. 1962 (c).

88.    As a direct and proximate result of each and every Defendants' conspiracy to reap huge financial gains, each and every Plaintiff has been financially injured in their business and property, including damage to Plaintiffs' reputations and good will and other damage to their business and/or property.

89.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from each and every Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

a.    Awarding Plaintiffs compensatory damages including actual, consequential, incidental for malicious tortious concerted conduct, jointly and severally, in an amount in excess of $400,000,000.00 or in an amount to be determined at by a jury at trial.

b.    Awarding Plaintiffs treble damages under RICO, plus attorneys fees and costs.

c.    Awarding Plaintiffs punitive damages in an amount to be determined by a jury.

d.      A preliminary and permanent injunction preventing threats and harassment by

Defendants MAGNI and SUSMAN.

e.      Granting such other relief as the Court deems appropriate and necessary.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**.

Dated: July 31, 2025                                    Respectfully Submitted,


                                                        *    /s/ Larry Klayman*
                                                        Larry Klayman, Esq.
                                                        Klayman Law Group, P.A.
                                                        Florida Bar. No. 246220
                                                        7050 W. Palmetto Park Rd
                                                        Boca Raton FL 33433
                                                        Telephone: 561-558-5336
                                                        Email: leklayman@gmail.com

                                                        *Counsel for Plaintiffs*

EXHIBIT 1

**Subject:** Fwd: Houston Rockets Uniform Sponsorship

**Date:** Tuesday, 7 August 2018 at 15:41:51 Pacific Daylight Time

**From:** Clinton Ehrlich

**To:** Jonathan Kendrick

**Forwarded email below:**

Clinton,

Per our conversation earlier, I had a discussion with Tad Brown (President of the Rockets) and Patrick Fertitta (son of Tilman Fertitta, owner of both the team and also Landry's Inc.).

If Rokit was to become the first ever uniform sponsor of the team (see attached) it would include a business portfolio wide relationship with the franchise, their home venue (the Toyota Center), and Landry's Inc. (http://www.landrysinc.com/default.asp#/page/1).

In addition to your logo on the Rockets uniform, you would receive a comprehensive marketing package, custom built to fit your goals and objectives. We're talking social, digital, appearances by the whole team, use of marks and IP rights for all your products (device, services, spirits, beer, etc.), in-arena exposure, hospitality, and more. The Rokit name would go on the jersey but you could leverage the partnership elements to promote all your products and services...no restrictions.

At the Toyota Center, we could rename different bars and hospitality areas after your spirit brands. We would also of course serve your product at all events including Rockets games, concerts, etc.

Patrick also made it clear that we could push your products at all 600 Landry's owned and operated locations around the world. He even threw out the idea of specialized cocktails at their restaurants promoting the brands.

What about ROK Rewards? Are you still doing that? So much we could do there.

This is a 5 year partnership and the average annual cost of the deal is $14MM...so $70MM over a 5 year spread. Year 1, the deal could be closer to $10MM or $12MM and if we pushed most of the billing for season 1 into 2019, it would only be a couple million in 2018.

If this is realistic, Tad will set-up a call with Tilman for later this week. Just has to be legit as Tilman has not jumped on any calls with me or attended any meetings to date....he is just excited about this one and is obviously very aware of JPD and JK.

This would be insane.

**Jason D. Miller**
Head of Property Sales
Excel Sports Management
1700 Broadway, 29th Floor



Russell Gillespie <russell.gillespie@rokinternational.com>

## FW: Pls pass onto THAD as did not get his email

**ROKiT - Michael Jones** <mj@rokit.com>
To: Russell Gillespie <russell.gillespie@rokit.com>

Wed, Jul 29, 2020 at 11:31 AM

**From:** JK <jk@rokstars.com>
**Sent:** Wednesday, August 15, 2018 12:36 PM
**To:** pjf@ldry.com
**Cc:** jkramer@ldry.com; jmiller@excelsm.com; Clinton Ehrlich <clinton.ehrlich@rokitworld.com>
**Subject:** Pls pass onto THAD as did not get his email


Patrick

Great to meet you guys and hope we can work out a deal with the sponsorship and the beverages


I know I can make the beverage work as we control the production, own the brewery, we own the Bogarts distillary and we are about to aquire the Bandero distilliry  and own distribution in  California and

As everyone agreed the products taste great  and have a great story and on price I can beat anything your buying at at the moment

 so a massive upside for you ( except bandero which is little tricky due to the agave going through the roof) but would put in every hotel room as well bottles of our products and miniatures as well

All on consignment for the hotels so NO risk

But if we can combine the two I can do the sponsorship  of the rockets


Alison my ceo is working with James on this


Also I can offer a phone to be placed  in every hotel room you have and that can offer unlimited international and domestic wifi of calling built into the phone and

It can come with telemedicine ,anything we desire, but any great offer and I could do this again at cost for the phone and no one can beat that, but all on consignment so no risk ( see .www.rokitworld.com)

But great service for you business customers


Along with rok vision , I would love to get our tech for you ( for free) as part of the overall partnership  so every
 Golden nugget casino chip can now talk directly to your customers!!!! And also on your menus a video could be shown showing hoe the food or cocktail is made

In fact we could make every casino chip , Bellagio, Wynn, Venetian everyone , when they scan it up comes up with the golden nugget video!! Now that would be fun!!!


Anyway take a look at the two presentations  and you will see what I am so enthusiastic about the MIZU


Look forward to making this happen


www.rokbrands.com

www.maisykay.com




Jonathan Kendrick
CHAIRMAN AND CO FOUNDER




**ROK GROUP**
OF COMPANIES LTD


Rok Mobile inc. *IF YOU KEEP DOING WHAT YOUR DOING   YOU'LL KEEP GETTING WHAT YOUR GETTING*

Rok Stars PLC. **Everything will be <u>alright</u> in the End.....if its not <u>alright...</u>...then its not <u>yet the END</u>**

Rokit Corp ltd. **Of course I want it TODAY, if I wanted it tomorrow,I'd order it TOMORROW**

Rok Water PLC. *<u>The same way of thinking what created the problem won't solve the problem</u>*
Rok Radio. **Were in a race......lets act like we are**

Rok TV .**I Never Lose , I just sometimes Don't Win.**

Rok Japan. *<u>Aut viam inveniam aut faciam</u> - I will either find a way or make one.*

Rok Vision. **THE ONLY FAILURE IS FAILURE TO TRY**

Rok Studios .**<u>You'll never know if you don't have a go</u>**

**ITS HARD TO BEAT A PERSON WHO <u>NEVER</u> GIVES UP**

**AIM HIGH OR   DON'T AIM AT ALL**

**<u>DO IT NOW !</u>**

**www.rokmobile.com**
**www.rokstars.com**

**www.rok-water.com**
**www.rok.tv**
**www.rokradio.com**

---

**2 attachments**

 **mizu_rokit_deck_forJK_Email[1][1].pdf**
   1616K

**20180730 ROKiT Story V16 All regions_.pptx**
   14261K



Alison Kennedy <alison.kennedy@rokstars.com>

## (no subject)
1 message

**JK** <jk@rokstars.com>                                                                 Wed, Aug 15, 2018 at 12:46 PM
To: pjf94@ldry.com, tad@rocketball.com
Cc: jkramer@ldry.com, jmiller@excelsm.com, Clinton Ehrlich <clinton.ehrlich@rokitworld.com>

Patrick
Great to meet you guys and hope we can work out a deal with the sponsorship and the beverages

I know I can make the beverage work as we control the production, own the brewery, we own the Bogarts
distillery and we are about to aquire the Bandero distilliry and own distribution in California and
As everyone agreed the products taste great and have a great story and on price I can beat anything your
buying at at the moment
so a massive upside for you ( except bandero which is little tricky due to the agave going through the roof) but
would put in every hotel room as well bottles of our products and miniatures as well
All on consignment for the hotels so NO risk
But if we can combine the two I can do the sponsorship of the rockets

Alison my ceo is working with James on this

Also I can offer a phone to be placed in every hotel room you have and that can offer unlimited international and
domestic wifi of calling built into the phone and
It can come with telemedicine ,anything we desire, but any great offer and I could do this again at cost for the
phone and no one can beat that, but all on consignment so no risk ( see .www.rokitworld.com)
But great service for you business customers

Along with rok vision , I would love to get our tech for you ( for free) as part of the overall partnership so every
Golden nugget casino chip can now talk directly to your customers!!!! And also on your menus a video could be
shown showing hoe the food or cocktail is made

In fact we could make every casino chip , Bellagio, Wynn, Venetian everyone , when they scan it up comes up
with the golden nugget video!! Now that would be fun!!!

Anyway take a look at the two presentations and you will see what I am so enthusiastic about the MIZU

Look forward to making this happen

www.rokbrands.com
www.maisykay.com



Jonathan Kendrick
CHAIRMAN AND CO FOUNDER



**ROK GROUP**
OF COMPANIES LTD

Rok Mobile inc. *IF YOU KEEP DOING WHAT YOUR DOING   YOU'LL KEEP GETTING WHAT YOUR GETTING*

Rok Stars PLC. **Everything will be <u>alright</u> in the End.....if its not <u>alright.</u>......then its not <u>yet the END</u>**

Rokit Corp ltd. **Of course I want it TODAY, if I wanted it tomorrow,I'd order it TOMORROW**

Rok Water PLC. *<u>The same way of thinking what created the problem won't solve the problem</u>*

Rok Radio. **Were in a race......lets act like we are**

Rok TV .**I Never Lose , I just sometimes Don't Win.**

Rok Japan. *<u>Aut viam inveniam aut faciam</u> - I will either find a way or make one.*

Rok Vision. THE ONLY FAILURE IS FAILURE TO TRY

Rok Studios .<u>**You'll never know if you don't have a go**</u>

ITS HARD TO BEAT A PERSON WHO <u>NEVER</u> GIVES UP

**AIM HIGH OR    DON'T AIM AT ALL**

<u>DO IT NOW</u> !

www.rokmobile.com
**www.rokstars.com**
www.rok-water.com
<u>www.rok.tv</u>
www.rokradio.com

---

**2 attachments**

 **mizu_rokit_deck_forJK_Email[1][1].pdf**
1616K

 **20180730 ROKiT Story V16 All regions_.pptx**
14261K



Alison Kennedy <alison.kennedy@rokstars.com>

## Introduction
2 messages

**Jason Miller** <jmiller@excelsm.com>                    Tue, Aug 14, 2018 at 7:07 AM
To: Alison Kennedy <alison.kennedy@rokstars.com>, "jkramer@ldry.com" <jkramer@ldry.com>
Cc: "jk@rokstars.com" <jk@rokstars.com>, Clinton Ehrlich <cehrlich@rokmobile.com>, "gretchens@rocketball.com"
<gretchens@rocketball.com>

James – thank you so much for your time last night. Based on the next steps Tilman and JK discussed at dinner, I wanted
to introduce you to Alison Kennedy, CEO of ROK Drinks. She can work with you to nail down all the details necessary to
lock in distribution for the portfolio at all 600+ Fertitta Entertainment locations.

Alison – thanks for all you did to make yesterday so special…copied on this email is James Kramer, VP of Beverage
Operations at Fertitta Entertainment.

Will step out of the way for now because this is not my area of expertise, but please let me know how I can be of
assistance throughout the process.

Thanks to all!



**Jason D. Miller**

Head of Property Sales

Excel Sports Management

1700 Broadway, 29th Floor

New York, NY 10019

646.798.8953 (o)

617.775.7287 (m)

http://www.excelsm.com

**JKramer@ldry.com** <JKramer@ldry.com>                    Tue, Aug 14, 2018 at 9:01 AM
To: jmiller@excelsm.com, alison.kennedy@rokstars.com
Cc: jk@rokstars.com, cehrlich@rokmobile.com, gretchens@rocketball.com

Thank you Jason. Alison, and I are scheduled for a phone call later this afternoon to review next steps.

I look forward to working with the team,

James

**From:** Jason Miller [mailto:jmiller@excelsm.com]
**Sent:** Tuesday, August 14, 2018 9:08 AM
**To:** Alison Kennedy <alison.kennedy@rokstars.com>; OP James Kramer <JKramer@ldry.com>
**Cc:** jk@rokstars.com; Clinton Ehrlich <cehrlich@rokmobile.com>; gretchens@rocketball.com
**Subject:** [EXTERNAL] Introduction

James – thank you so much for your time last night. Based on the next steps Tilman and JK discussed at dinner, I wanted to introduce you to Alison Kennedy, CEO of ROK Drinks. She can work with you to nail down all the details necessary to lock in distribution for the portfolio at all 600+ Fertitta Entertainment locations.

Alison – thanks for all you did to make yesterday so special…copied on this email is James Kramer, VP of Beverage Operations at Fertitta Entertainment.

Will step out of the way for now because this is not my area of expertise, but please let me know how I can be of assistance throughout the process.

Thanks to all!



**Jason D. Miller**

Head of Property Sales

Excel Sports Management

1700 Broadway, 29th Floor

New York, NY 10019

646.798.8953 (o)

617.775.7287 (m)

**MailScanner has detected a possible fraud attempt from "urldefense.proofpoint.com" claiming to be** http://www.excelsm.com



Alison Kennedy <alison.kennedy@rokstars.com>

## Alcohol

2 messages

**Jason Miller** <jmiller@excelsm.com>                                           Fri, Aug 10, 2018 at 11:41 AM
To: Gretchen Sheirr <gretchens@rocketball.com>
Cc: Alison Kennedy <alison.kennedy@rokstars.com>

Gretchen,

A copious amount of alcohol should have arrived to your offices, to Dawn's attention. Alison, CEO of ROK Drinks, is
copied and just wanted to make sure because she got a confirmation that it did in fact arrive.

Can you confirm?



**Jason D. Miller**

Head of Property Sales

Excel Sports Management

1700 Broadway, 29th Floor

New York, NY 10019

646.798.8953 (o)

617.775.7287 (m)

http://www.excelsm.com

**Gretchen Sheirr** <gretchens@rocketball.com>                                   Fri, Aug 10, 2018 at 11:46 AM
To: Jason Miller <jmiller@excelsm.com>
Cc: Alison Kennedy <alison.kennedy@rokstars.com>

We have it! I haven't had a chance to open the boxes yet, but it is HERE! Thank you so much! Nice to e-meet you Alison.

**From:** Jason Miller <jmiller@excelsm.com>
**Sent:** Friday, August 10, 2018 1:41 PM
**To:** Gretchen Sheirr <gretchens@rocketball.com>
**Cc:** Alison Kennedy <alison.kennedy@rokstars.com>
**Subject:** Alcohol

ROK Mail - Alcohol

Gretchen,

A copious amount of alcohol should have arrived to your offices, to Dawn's attention. Alison, CEO of ROK Drinks, is copied and just wanted to make sure because she got a confirmation that it did in fact arrive.

Can you confirm?



**Jason D. Miller**

Head of Property Sales

Excel Sports Management

1700 Broadway, 29th Floor

New York, NY 10019

646.798.8953 (o)

617.775.7287 (m)

http://www.excelsm.com

# Houstonia.
# Houstonia.



**Eat & Drink** › Cocktails & Spirits

**SHOOT YOUR SHOT**

# There's a New Tequila Terrace at Toyota Center

Bandero transformed a previously vacant nook outside the Toyota Center suites into a drinking destination.

By Abby Ledoux • 1/15/2019 at 7:00am



IMAGE: COURTESY OF BANDERO

**A NEW TEQUILA TERRACE** at the Rockets' home court means James Harden isn't the only one taking shots in the Toyota Center anymore. In a two-week transformation, Bandero Tequila converted an empty nook outside Toyota's suites into a bar and social space.

Case 3:25-cv-01041-WWB-LLL    Document 1-1    Filed 09/05/25    Page 34 of 43 PageID 38

The terrace, unveiled last month the same night the Rockets bested the Lakers 126-111, is open to ticket-holders for all home games plus concerts and other events hosted at Toyota, recently ranked the 14th most Instagrammable arena in the country (score).

The partnership between the Rockets and Bandero, a spirit from the highlands of Jalisco, Mexico, isn't as random as it may seem: Bandero is part of ROK Drinks' spirits portfolio; if that name sounds familiar, it's because you've seen a version of it on your favorite players' jerseys since last fall when, in a particularly fittingly-named, four-year deal, tech brand ROKiT became the Rockets' inaugural jersey sponsor.



IMAGE: COURTESY OF BANDERO

Both ROKiT—known for its more affordable mobile phones that use NASA technology—and ROK Drinks are part of the larger ROK Brands umbrella that's grown increasingly visible around the Toyota Center. Bandero Tequila Terrace, for instance, joins Bogart's Lounge—a hidden, floor-level space for platinum ticket-holders that feels more like a speakeasy than a stadium bar—home to bespoke cocktails made from Bogart's Gin, Vodka, Rum, and Irish Whiskey, all part of ROK Drinks. A third Toyota lounge space will be reimagined as a beer garden for ABK Beer.

As for the tequila terrace, it's hard to miss thanks to a floor-to-ceiling mercury mirror behind the bar, and—on opening night—mariachi performances. There are also quieter nods to the spirit's Mexican

Case 3:25-cv-01041-WWB-LLL    Document 1-1    Filed 09/05/25    Page 35 of 43 PageID 39

roots, like an image embossed on the bar mirror that alludes to *Los Guachimontones,* the world's only circular pyramids. The prehistoric archaeological site is nearby Bandero's Guadalajara distillery.

Filed under

[Houston Rockets](#), [Houston Toyota Center](#), [Toyota Center](#), [Tequila](#)

Show Comments

## Related Content



**DOING IT FOR THE 'GRAM**
### Is Houston's Most Instagrammable Location...the Toyota Center?
01/03/2019 • By Abby Ledoux



**BUBBLE BURST**
### Rockets' Russell Westbrook Tests Positive For COVID-19
07/13/2020 • By Timothy Malcolm



**OH NO**
### It's Been a Crazy Week for Houston Celebrities
07/15/2020 • By Catherine Wendlandt



**PLAY BALL**
### 7 Historic Houston Sports Wins To Watch
04/07/2020 • By Timothy Malcolm

447 Heights Boulevard, Houston, TX 77007
Phone: 713-862-4570 ▪ Fax: 713-862-4606



**CHANNELS** | Eat & Drink   Arts & Culture   Style & Shopping   News & City Life   Home & Real Estate   Travel & Outdoors   Health & Wellness

**ABOUT US** | Masthead   Advertise   Jobs   Internships   Privacy Policy   Terms of Use   Contact Us

**SUBSCRIPTIONS** | Subscribe   Renew Subscription   Change Address   Subscriber FAQ   Purchase Back Issues   Pay Invoice   Newsletters

Case 3:25-cv-01041-WWB-LLL     Document 1-1    Filed 09/05/25     Page 36 of 43 PageID 40



Alison Kennedy <alison.kennedy@rokstars.com>

## Personal
2 messages

Jonathan Kendrick <jk@rokit.com>                             Mon, May 18, 2020 at 5:17 PM
To: Tad Brown <tadb@rocketball.com>

Dear Tad

This past Friday, ROKiT submitted its counterclaim in the ongoing arbitration between our two organizations. The document states that ROKiT is seeking damages of no less than $95M. I was counselled to put forth a much larger number as we can prove what losses we have had in China and also based on actual numbers from other brands who have suffered for the demise of the NBA there, but decided to start here in the hope that we may be able to arrive at an agreement on the way forward which would be more in-line with the nature of our relationship over the course of our partnership.

I fear you and your legal team are not fully aware of the consequences of this arbitration and clearly do not realize our size of the claim which is beyond all reasonable doubt, provable.

The China opportunity and our access to it through our partnership with the Rockets was a critical part of our global strategy. The unravelling of our plans as a result of Mr. Morey's tweet has forced us into a position where we must pursue legal claims against the Rockets for the damages suffered by ROKiT. Further, the benefits that ROKiT would have received from our partnership have been eliminated by the suspension of the NBA's season due to the conditions created by the global pandemic of COVID-19 and the ensuing shutdown of global economic activity.

We also have been made aware that certain parties from your organization have divulged this non-payment issue to third parties including to some of our other partners and their and our employees but failed to mention our claim in these matters i.e., China debacle and the lack of any games being played.

Before we start incurring material costs in the arbitration and expending considerable management time, I would like to see if there is any scope at this stage to settle this matter, otherwise we will end up with a result where only the lawyers are happy. If so, please contact me. I realize your group has much bigger financial issues to contend with and do not want to add to these but please be aware we have enough evidence and proof to show we have had substantial losses.

ROKiT and its affiliated companies reserve all rights and remedies that they may have in respect of this matter.

www.rokit.com

www.rokitbrands.com

www.therokitgroup.com

www.maisykay.com







Jonathan Kendrick
CHAIRMAN AND CO FOUNDER

*WHAT WOULD YOU ATTEMPT TO DO IF YOU KNEW YOU COULD NOT FAIL?*







Rokit group ltd. *IF YOU KEEP DOING WHAT YOUR DOING   YOU'LL KEEP GETTING WHAT YOUR GETTING*

rokit  ltd. **Of course I want it TODAY, if I wanted it tomorrow,I'd order it TOMORROW**

Rok Stars PLC. **Everything will be <u>alright</u> in the End.....If its not <u>alright...</u>....then its not <u>yet the END</u>**

---

**Alison Kennedy** <alison.kennedy@rokstars.com>
To: Jonathan Kendrick <jk@rokit.com>

Mon, May 18, 2020 at 9:23 PM

That's a very fair letter and truly offers them a Great resolution.
[Quoted text hidden]
--
Alison Kennedy
CEO
Mobile) 323-394-3999

**Subject:** Thank You!

**Date:**    Tuesday, 14 August 2018 at 07:01:49 Pacific Daylight Time

**From:**    Jason Miller

**To:**      jk@rokstars.com, Clinton Ehrlich

**CC:**      Tad Brown, gretchens@rocketball.com

JK & Clinton – I just wanted to thank you both for taking time out of your busy schedules to fly to Houston and spend the day with us. This is going to be a monumental partnership for all three organizations (ROK/ROKiT, the Rockets, and Landry's Inc.). Under separate cover I'm going to introduce Alison to James so they can get the process started on that side of the house, and in the meantime, we're going to get going on the sponsorship agreement.

Attached is the term sheet we reviewed together yesterday, as well as the deck to provide visual support. Please let us know what comments, questions, and/or concerns you have. I am at your disposal to speak through this at any time.

Clinton I'll look forward to our breakfast meeting next Tuesday and JK, I'll let you know by EOD on whether Tuesday or Wednesday works best for dinner at your sushi spot...can't wait for that.

Best of luck with all the announcements this week. What a cool company you're building and what an amazing day yesterday was. Serendipity at it's finest. Safe travels home!



**Jason D. Miller**
Head of Property Sales
Excel Sports Management
1700 Broadway, 29th Floor
New York, NY 10019
646.798.8953 (o)
617.775.7287 (m)
http://www.excelsm.com

EXHIBIT 2





**PEOPLE AND POP CULTURE**

## Patrick Fertitta Carves Out Unique Decision-Making Role With Rockets

7.1.2019

Rockets Owner **TILMAN FERTITTA**'s son, **PATRICK**, has become a "fixture in decision-making" for the team, as the 24-year-old is in the "middle of all forms of Rockets decision-making, from upgrades" to Toyota Center to who will play in it, according to Jonathan Feigen of the HOUSTON CHRONICLE. Patrick Fertitta said his father is a "very busy person," as he "operates two other massive companies" outside of the Rockets in Golden Nugget Casinos and Texas-based restaurant and entertainment company Landry's.Patrick Fertitta: "That allows me to have a presence in certain areas within the organization that he's not able to always focus on. Being able to be his eyes and ears and a resource to him that he trusts and he knows is loyal and is thinking about not only what is best for the organization but what is best for our family is a void I've been able to fill." Rockets CEO **TAD BROWN** said, "Patrick is there representing Tilman and the family, and he is given authority up to a certain point." Rockets GM **DARYL MOREY** said Patrick Fertitta is "smart, knows basketball" and has a "great mind." Morey: "Really surprising for someone his age. I don't even understand it." Feigen noted the Rockets "hope that the combination of Tilman and Patrick Fertitta will offer free agents access to Tilman Fertitta's business acumen with a chance to relate to someone in ownership that is younger than the players the Rockets recruit" (*HOUSTON CHRONICLE, 6/29*).

© 2023 Leaders Group. All rights reserved. The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Leaders Group.

EXHIBIT 3

**Subject:** Fwd: Houston Rockets Uniform Sponsorship
**Date:** Tuesday, 7 August 2018 at 15:41:51 Pacific Daylight Time
**From:** Clinton Ehrlich
**To:** Jonathan Kendrick

Forwarded email below:

Clinton,

Per our conversation earlier, I had a discussion with Tad Brown (President of the Rockets) and Patrick Fertitta (son of Tilman Fertitta, owner of both the team and also Landry's Inc.).

If Rokit was to become the first ever uniform sponsor of the team (see attached) it would include a business portfolio wide relationship with the franchise, their home venue (the Toyota Center), and Landry's Inc. (http://www.landrysinc.com/default.asp#/page/1).

In addition to your logo on the Rockets uniform, you would receive a comprehensive marketing package, custom built to fit your goals and objectives. We're talking social, digital, appearances by the whole team, use of marks and IP rights for all your products (device, services, spirits, beer, etc.), in-arena exposure, hospitality, and more. The Rokit name would go on the jersey but you could leverage the partnership elements to promote all your products and services...no restrictions.

At the Toyota Center, we could rename different bars and hospitality areas after your spirit brands. We would also of course serve your product at all events including Rockets games, concerts, etc.

Patrick also made it clear that we could push your products at all 600 Landry's owned and operated locations around the world. He even threw out the idea of specialized cocktails at their restaurants promoting the brands.

What about ROK Rewards? Are you still doing that? So much we could do there.

This is a 5 year partnership and the average annual cost of the deal is $14MM...so $70MM over a 5 year spread. Year 1, the deal could be closer to $10MM or $12MM and if we pushed most of the billing for season 1 into 2019, it would only be a couple million in 2018.

If this is realistic, Tad will set-up a call with Tilman for later this week. Just has to be legit as Tilman has not jumped on any calls with me or attended any meetings to date....he is just excited about this one and is obviously very aware of JPD and JK.

This would be insane.

**Jason D. Miller**
Head of Property Sales
Excel Sports Management
1700 Broadway, 29th Floor